UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | | |
|---|---|---|
| LEE SKIDMORE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. |
| | ) | 6:17-cv-99-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL., Deputy | ) | **& ORDER** |
| Commissioner of Operations of | ) | |
| the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

Plaintiff Lee Skidmore brings this matter under 42 U.S.C. §
405(g) seeking judicial review of an administrative decision of
the Commissioner of Social Security.   The Court, having reviewed
the record, will **AFFIRM** the Commissioner's decision as it is
supported by substantial evidence.

I.

In determining disability, an Administrative Law Judge
("ALJ") uses a five-step analysis. *See Jones v. Comm'r of Soc.
Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).   Step One considers
whether the claimant is still performing substantial gainful
activity; Step Two, whether any of the claimant's impairments are
"severe"; Step Three, whether the impairments meet or equal a
listing in the Listing of Impairments; Step Four, whether the
claimant can still perform his past relevant work; and Step Five,

1

whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *Id.; see also Preslar v. Sec'y of Health & Human Servs*., 14 F.3d 1107, 1110 (6th Cir. 1994).

## II.

Plaintiff filed an application for Title XVI supplemental security income ("SSI") on August 13, 2013, alleging disability beginning October 1, 2007.  [TR 90, 227-35].  The claim was denied initially and upon reconsideration.  [TR 90].  After a hearing, Administrative Law Judge ("ALJ") Janice Barnes-Williams denied Plaintiff's claims on December 16, 2015.  [TR 87-107].  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review of the ALJ's ruling.  [TR 1-7].  This appeal followed pursuant to 42 U.S.C. § 405(g).  Consistent with the Court's Standing Scheduling Order, the parties have submitted cross motions for summary judgment, which are ripe for review. [DE 11, 13].

Skidmore was 40 years old when he filed for benefits and claimed disability since October 2007 when he was 34 years old. [TR 227].  Skidmore estimates his height and weight at 6'3 or 6'4 and 280 pounds.  [TR 114].  His highest level of education was eighth grade, and he struggles with reading, writing, and simple

math.  [TR 117-18, 255-57].  Plaintiff most recently worked as a fiberglass machine operator.  [TR 128].  He previously worked several other jobs.  [TR 257].  Plaintiff claims his mental impairments, coupled with physical and psychiatric conditions, render him disabled and unable to work.  [DE 11-1, p. 9].

Skidmore claims a range of disabilities including a lazy right eye, learning disability, illiteracy, headaches, and back problems.  [TR 256].  At the hearing in front of the ALJ, Skidmore testified about his medical and mental history and conditions.  Skidmore testified that he is unable to read or write and needed someone to help him fill out various forms in filing for Social Security benefits.  [TR 117].  He said he was in special education classes in school, and had physical problems with his legs and back, as well as headaches.  [TR 119-21].  He also stated that he could lift only ten pounds and could not sit longer than fifteen minutes without having to move around.  [TR 120].  Skidmore also testified he suffered from Hepatitis C, had a lazy eye, and suffered from anxiety and depression.  [TR 122-24].

In March 2004, Skidmore visited Greenville Memorial Hospital complaining of testicular pain.  [TR 397-98].  Doctors reported a normal testicular ultrasound and noted that Skidmore was engaged in drug-seeking behavior.  [TR 398].

In March 2010, Skidmore visited Dr. Melvin Porter Jr complaining of a lazy right eye, learning disability, chronic low back pain, and chronic headaches. [TR 337]. Dr. Porter reported that Skidmore's right eye deviated laterally and assessed amblyopia in the eye with legal blindness. [TR 338]. Dr. Porter also found Skidmore to have learning disability and illiteracy, low back pain and headaches. [*Id*.]. Plaintiff's extremities were normal and had a normal range of motion. [*Id*.].

In October 2013, Plaintiff visited Dr. Wifredo Fernandez, claiming illiteracy and lower back pain. [TR 346]. An examination revealed Skidmore to have normal posture and gait, and his right eye extraocular movements limited due to inability of internal rectus. [TR 348]. Skidmore scored 4/5 on strength in his extremities and had intact sensation and unremarkable reflexes. [*Id*.]. Dr. Fernandez concluded that Skidmore had the ability to perform activities involving sitting, standing, moving about, handling objects, hearing and speaking. [TR 349]. The doctor also reported that it would be reasonable to expect Skidmore to have no difficulty performing activities involving lifting reasonable objects and carrying them. [*Id*.].

In February 2014, Skidmore visited the emergency room after he fell. [TR 377]. Skidmore reported pain in this back, neck, legs, knees, and arms. [*Id*.]. The report indicated Skidmore was

suffering from no acute distress and had no evidence of significant external trauma. [*Id*.]. Clinicians also labeled Skidmore as a "chronic alcoholic." [*Id*.]. At that time, imaging of Skidmore's lower back, head, knees, neck, and ribs showed no abnormalities other than below normal bone density in his rib bones. [TR 382-86].

Skidmore then visited Cumberland River Comprehensive Care in March 2014 complaining of pain, depression, and anxiety. [TR 360]. Skidmore also reported sleep disturbance, low energy, inability to focus, nausea, numbness, and hallucinations. [TR 360-61]. A mental status exam showed normal interaction, no deficits in cognition, good judgment and insight, logical thought process, and average intelligence. [TR 370]. Skidmore was diagnosed with mood disorder, alcohol dependency, and borderline intellectual functioning, and was assessed a GAR of 70-75. [TR 371, 373]. Mild mental retardation, post-traumatic stress disorder, and substance induced mood disorder were ruled out. [*Id*.]. In March and April 2014, Skidmore visited Dr. Kimal Sidhu in Harland, Kentucky. [TR 400-02]. Skidmore complained of having back and neck pain, hip pain, lower back pain, knee pain, and testicular pain. [TR 402].

Plaintiff visited Mountain Comprehensive Health Corporation (MCHC) in July 2014. [TR 403]. Nurse practitioner Misty Turner expressed concern that Skidmore had SLE (systemic lupus

erythematosus) and referred him to a rheumatologist for further evaluation. [*Id*.]. During his visit, Plaintiff complained of pain and tenderness but had normal memory and appropriate mood. [TR 405]. In March 2015, Plaintiff was seen by the UK Internal Medicine Department of Rheumatology. [TR 456-60]. His body mass index was 29.5. [TR 457]. Plaintiff had an exquisitely tender abdomen in the epigastric region with palpable indurated mass in the area. [TR 458]. Plaintiff also had an antalgic gait, and limited range of motion. [*Id*.]. However, judgment and insight were normal, as well as muscle strength and tone. [*Id*.]. Dr. Beatriz Hanaoka reported that she did not see any evidence of an inflammatory arthritis and that Plaintiff's pain was likely due to degenerative joint disease. [*Id*.]. Imaging revealed no abnormalities in Skidmore's hands, wrists, feet, and back. [TR 434].

Records from when Plaintiff was fourteen years old and in school showed a 95 to 100 percent chance that Skidmore's full scale IQ was between 59 and 71. [TR 321]. That also indicated Plaintiff's verbal score fell in the range of 62 to 76 and his performance score fell in the range of 56 to 74. [TR 321].

Plaintiff underwent a consultative examination on May 12, 2010 performed by Joseph K. Hammond, Ph.D. [TR 340-44]. Skidmore told Hammond he could shower, dress, prepare food, help with dishes

and laundry, drive, and buy his own groceries. [TR 341]. Hammond reported Skidmore could sit, rise, and ambulate without assistance. [*Id*.]. Skidmore did not seem delusional or psychotic. [*Id*.]. Dr. Hammond further reported that Plaintiff struggled with a four-item word list and counted slowly which raised concerns about Skidmore's level of effort. [*Id*.]. On the Wide Range Achievement Test-3 Reading section, Skidmore received a standard score of less than 45 after misreading several words. [TR 342]. Hammond also administered the Wechsler Adult Intelligence Scale-IV and obtained scores in the 50s and 60s. [*Id*.]. Hammond did not consider the scores valid, and because of invalid testing Dr. Hammond could not determine a diagnosis. [TR 342-43].

Skidmore went through another consultative examination on November 9, 2013 with Dominika Prus, Psy.D. [TR 353]. During this exam, Skidmore was unable to spell the word "world" backwards, but was able to directly repeat up to four-digit series of numbers and up to a three-digit series of numbers in reverse. [TR 356]. Skidmore could not answer simple arithmetic questions and showed deficits in his memory as he struggled to recall recent events and details regarding his remote history. [*Id*.]. He showed limited verbal abilities and some likely cognitive deficits. [*Id*.]. Prus noted that Skidmore seemed uncomfortable and displayed socially inappropriate behavior; Plaintiff's affect was sad and angry with

depressed mood. [*Id*.]. Plaintiff also showed poor judgment and had impaired decision-making skills. [TR 356-57]. Dr. Prus assessed depressive disorder, anxiety disorder, cognitive disorder, and ruled out mild mental retardation. [TR 357]. Dr. Prus further opined that Skidmore had extreme limitation to understand, remember, and carry out instructions toward performance of simple tasks. [TR 357]. Dr. Prus also determined that Skidmore's ability to tolerate stress and pressure of day-to-day employment appears affected by the impairments to a marked degree. [*Id*.]. Dr. Prus then opined that Skidmore had marked limitations in (1) sustaining attention and concentration towards performance of simple repetitive tasks and (2) his capacity to respond appropriate to supervisors and coworkers in a work setting. [TR 358].

In December 2013, state agency psychologist Lea Perritt, Ph.D., reviewed Plaintiff's records. She concluded Skidmore could complete simple repetitive tasks, but was moderately limited in his ability to understand and remember detailed instructions. [TR 144]. Perritt further found Skidmore could sustain attention for periods of two hours as required in a normal forty-hour work week and was moderately limited in his ability to interact appropriately with the general public. [TR 144-45]. Dr. Perritt found Skidmore not significantly limited in his ability to: ask questions, accept

instructions, get along with coworkers, maintain socially
appropriate behavior, maintain a schedule, sustain an ordinary
routine, work in coordination with others, and make simple work-
related decisions. [TR 144-45]. Ellen Shapiro, Ph.D. agreed with
Dr. Perritt's assessment in February 2014. [TR 161-62].

After the hearing and considering all the evidence, the ALJ
issued her ruling on December 15, 2015. [TR 87]. At Step One,
ALJ Barnes-Williams found that Plaintiff had not engaged in
substantial gainful activity since August 13, 2013. [TR 92]. At
Step Two, the ALJ concluded that Plaintiff had the following severe
impairments: amblyopia of the right eye, cervical and lumbar
spondylosis, arthritis, depressive disorder, anxiety disorder,
cognitive disorder, history of learning disability, and mood
disorder. [*Id.*].

At Step Three, ALJ Barnes-Williams determined that Plaintiff
did not have an impairment or combination of impairments that meets
or medically equals the severity of one of the listed impairments
in 20 C.F.R. Part 404, Subpart P, Appendix 1. [TR 93]. In reaching
this conclusion, ALJ Barnes-Williams found that Plaintiff's
evidence did not satisfy the criteria of Listing 1.04 because the
evidence "does not establish medical findings necessary." [*Id.*].
The ALJ noted that Skidmore did not have evidence of "nerve root
compression, spinal arachnoiditis, or spinal stenosis resulting in

9

an inability to ambulate effectively." [*Id*.].  The ALJ further

found that Skidmore failed to produce evidence meeting the criteria

of Listing 1.02 and 2.02.  [*Id*.].  Finally at Step Three the ALJ

determined that claimant's mental impairments, considered singly

and in combination, did not meet or medically equal the criteria

of listings in 12.02, 12.04, 12.05, and 12.06.  [*Id*.].  In making

this determination, the ALJ gave great weight to the State agency

consultants' opinions that Skidmore's mental impairments cause mid

restriction of activities, moderate difficulties in maintaining

social functioning, moderate difficulties in maintaining

concentration, persistence or pace, and no repeated episodes of

decompensation. [TR 94-96].

Before proceeding to Step Four, ALJ Barnes-Williams found

that Plaintiff had the residual functional capacity ("RFC") to

perform light work as defined in 20 C.F.R. § 416.967(b) and SSR

83-10.  Specifically, the ALJ found the claimant could:

> Lift and carry 10 pounds frequently and 20 pounds
> occasionally; sit up to six hours in an eight-hour
> workday; and stand and/or walk up to six hours in an
> eight-hour workday.  However, the claimant should
> avoid foot control operations, and can occasionally
> climb ramps and stairs, stoop, kneel, crouch, and
> crawl.  He should never climb ladders, ropes, or
> scaffolds or balance, as defined in the Dictionary
> of    Occupational    Titles    and    the    Selected
> Characteristics of Occupations, and he should avoid
> exposure to extreme cold and wetness (related to
> weather conditions).   He is also limited to work

that does not require depth perception. The claimant can perform simple, routine, and repetitive tasks, which may require detailed instructions, but do not involve complex tasks. He must work in a work environment free of fast-paced production requirements, which involves only simple, work-related decisions, with few, if any, work place changes. He should have no contact with the public, and he can work around co-workers but with only occasional interaction with co-workers. The claimant is also illiterate, as defined in the Social Security regulations, with an inability to read or write even simple messages such as instructions.

[TR 96].

The ALJ then concluded, at Step Four, that Plaintiff was unable to perform any past relevant work. [TR 102]. And at Step Five the ALJ also found that other jobs in the national economy are available that Skidmore could perform. [*Id*.]. ALJ Barnes-Williams based her conclusion on testimony from a vocational expert ("VE") in response to hypothetical questions assuming an individual of Plaintiff's age, education, work experience, and RFC. [TR 103]. The VE testified that such an individual could perform a job such as garment sorter (211 jobs in Kentucky and 28,000 nationally), shirt presser (100 Kentucky / 41,950 nationally), and garment bagger (106 Kentucky / 53,752 nationally). Thus, ALJ Barnes-Williams determined Plaintiff was not disabled under the Social Security Act. [*Id*.].

Plaintiff argues the ALJ erred in two ways. First, Skidmore contends that the ALJ failed to find that Skidmore meets the criteria of Listing 12.05. And second, Plaintiff argues that the ALJ's decision is not supported by substantial evidence.

## III.

When reviewing the ALJ's ruling, this Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. We are to affirm the decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## IV.

### A. Listing 12.05

Plaintiff argues that the ALJ erred in finding that Skidmore did not meet the criteria in Listing 12.05. [DE 11-1, p. 7]. This is the listing for the mental disorder of intellectual disability.

20 C.F.R. pt. 404 subpt. P, app. 1, § 12.05.  In particular,
Skidmore argues that the evidence shows he met the criteria in
12.05(B).  The Commissioner argues that the ALJ specifically
considered Listing 12.05 and detailed several reasons why
Plaintiff failed to meet the criteria.  [DE 13, pp. 9-10].  For
example, the ALJ explicitly referred to and considered Listing
12.05(B) and 12.05(C) and determined that substantial evidence
called into question the validity of Plaintiff's IQ scores.  [TR
95-96].  The Commissioner also argues that evidence in the record
suggests Plaintiff has no significant cognitive defects and that
Plaintiff has normal memory, cognition, judgment, and insight.
[DE 13, p. 10].  And finally, Commissioner argues that even if the
ALJ found the IQ scores to be valid, that alone does not require
that the ALJ find Listing 12.05 satisfied.  [DE 13, p. 11].

As an initial matter, the Court notes that although Skidmore
cites the current version of Listing 12.05, that is not what was
before the ALJ.  The agency issued new regulations in September
2016, which took effect in January 2017, for the metal listings.
*See* Revised Medical Criteria for Evaluating Mental Disorders, 81
Fed. Reg. 66138-01 (Sept. 26, 2016).  The ALJ made her decision in
December 2015, and thus based her findings on the old version of
Listing 12.05.

As noted above, a claimant bears the burden at Step Three of demonstrating an impairment that meets a medical listing. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Buress v. Sec'y Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987). The plaintiff must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990). When a claimant has impairments that meet or equal a listed condition, the ALJ must find the claimant disabled. *See* 20 C.F.R. § 416.920(a)(4)(iii). But when an impairment "manifests only some of those criteria, no matter how severely" it does not qualify. *Sullivan*, 493 U.S. at 530.

Here, Plaintiff argues that the ALJ should have found that Skidmore met 12.05 for several reasons. First, Plaintiff's eighth grade IQ scores ranged from the 50s and 60s. Second, a 2010 test also indicated scores in the 50s and 60s. And third, Plaintiff argues that his testimony and other medical evidence support meeting 12.05. Each argument fails.

First, the IQ scores. The version of Listing 12.05 used by the ALJ—i.e., the version in place at the time of the ALJ's decision—contains an introductory paragraph and four "prongs" under paragraphs A through D. The introductory paragraph defines intellectual impairment as "significantly subaverage general

14

intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05 (2015). "If your impairment satisfies the diagnostic description in the introductory paragraph and any of the four sets of criteria, we will find that your impairment meets the listing." *Id.* Paragraph C required a "valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function." Thus, at the time of the ALJ's decision, a claimant could meet 12.05(C) if he showed: "(1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22, (2) a valid verbal, performance, or full scale IQ of 60 through 70, and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 455 (6th Cir. 2016) (internal quotations omitted). Under Paragraph B, a claimant had to show a valid verbal, performance, or full scale IQ of fifty-nine or less. *See Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 460 n.1 (6th Cir. 2012).

As the ALJ noted, these listings require *valid* scores and Skidmore's "last valid IQ testing was performed 26 years prior to his application date" when Skidmore was in the eighth grade. [TR 95]. ALJ Barnes-Williams did not consider the eighth-grade scores valid because they were indefinite and remote in time. As the ALJ noted, the twenty-six-year-old test ranged from 59 to 71, meaning that Skidmore would meet the 12.05 criteria only if the ALJ credited the very low end of the testing. And in any event, the results of this IQ test—taken while Skidmore was a child—were valid for only two years after testing and thus had already expired. *See Crum*, 660 F. App'x at 455; *Lete v. Colvin*, No. CIV.A.14-66, 2015 WL 4548736, at *3 (E.D. Ky. July 28, 2015).

The ALJ further found that more recent scores were not considered valid. [TR 95]. When Joseph Hammond, Ph.D. administered testing in 2010 he reported the tests were not valid based on a lack of effort. [TR 340-44]. Hammond's report, when viewed in combination with notes from other medical evidence showing Plaintiff to have normal memory, cognition, judgment, insight and thought process, supports the ALJ's conclusion that the IQ scores were not valid. [TR 370, 390, 405, 411, 431, 458]. Thus, the ALJ reasonably ruled that Skidmore did not satisfy Listing 12.05.

Second, the evidence. Even if the IQ were valid, the ALJ's decision would not be reversible because "the mere fact of a

qualifying IQ score does not require that the ALJ find mental retardation . . . when substantial evidence supports the contrary conclusion or the claimant's allegations of her capabilities are deemed not credible." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 721 (6th Cir. 2012). The ALJ here found that Skidmore did not have adaptive functioning limitations and could largely care for himself. Indeed, significant evidence suggested the Plaintiff had normal memory, cognition, judgment, insight, and a thought process. And although Dr. Prus found Plaintiff suffered some impairments, the ALJ found Dr. Prus' opinion was "not supported by the claimant's treatment records." [TR 95]. The record indicates that the ALJ's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

## B. Substantial evidence

Finally, Skidmore argues generally that the ALJ's decision is not supported by substantial evidence. Skidmore claims that the combined effects of his physical and mental impairments indicate he could not perform even sedentary work on a regular and sustained basis. [DE 11-1, p. 10]. Beyond that, however, Skidmore does not explain his argument. Instead, he presents only a vague and conclusory statement that substantial evidence does not support the ALJ's decision. The Court notes that Skidmore's failure to

develop his argument is a basis for waiver. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003).

But even considering Skidmore's argument, the Court finds no merit. As the Court has already pointed out, significant evidence indicates Skidmore had normal memory, cognition, judgment, insight, strength, reflexes, gait, no sensory loss, and normal imaging. [TR 338, 348, 370, 382-85, 390, 405, 411, 431, 434, 458]. In July 2014 Nurse Practioner Turner recommended that Skidmore should *increase* his activity. [TR 412]. In short, "the record is replete with medical evidence that [Plaintiff's] symptoms were not as severe" as he claims. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 543 (6th Cir. 2007). Put differently, "the ALJ's decision adequately explains and justifies its determination as a whole" and thus "satisfies the necessary requirements to survive [judicial] review." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012).

V.

The Court having found no legal error on the part of the ALJ and that her decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED.**

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [DE 11] be, and the same hereby is, **DENIED.**

A separate judgment in conformity herewith shall this date be entered.

This the 17th day of April, 2018.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge